Larry DUNN, et al., Plaintiffs,

v.

AIR LINE PILOTS ASSOCIATION, et al., Defendants.

No. 91–2679–CIV.

United States District Court, S.D. Florida.

April 7, 1993.

Myles J. Tralins, Miami, FL, for plaintiffs.

Robert T. Kofman, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Stuart A. Goldstein, Corrigan, Zelman & Bander, Miami, FL, for defendants.

## ORDER ON MOTIONS TO DISMISS

EDWARD B. DAVIS, District Judge.

Before the Court are a Motion to Dismiss brought by Defendants Charles H. Copeland, Edward J. Breen, Lewis Baldwin, Robert McMullen and Greg Petachenko, and Motion for an Order Dismissing the Amended Complaint or, in the Alternative, to Stay This Action, brought by Defendants Air Line Pilots Association, Henry Duffy, and Randy Babbitt. (D.E. 41, 44). At root, these Motions present two issues: whether Plaintiffs' state law claims are preempted by federal labor law, and whether Plaintiffs' claims based on the duty of fair representation are time-barred. Because preemption does apply, but the time limitation does not, the Court will grant these Motions in part.

### I. Background

The Plaintiffs were flight crew members employed by Eastern Air Lines during a strike in 1989. They are suing a labor organization called the Air Line Pilots Association ("ALPA"), officers of ALPA, and the Chairman of the Master Executive Council and the members of the Strike Committee of ALPA's Eastern Air Lines Chapter ("the Chapter").

The Amended Complaint explains the gravamen of the dispute. On March 4, 1989, Eastern employees who were members of the Local 100, International Association of Machinists & Aerospace Workers ("IAM") went on strike. On the same day, under instruction from the Chapter's Master Executive Council, ALPA members refused to cross the IAM picket lines at Eastern.

Between August 5 and 7, various ALPA officials instructed the Plaintiffs to cross the lines and go back to work. Also, on November 23, Defendants from the Chapter gave the Plaintiffs similar instructions. At various times after August 6, a group of the Plaintiffs [1] complied.

In December, the Defendants compiled the Plaintiffs' names into a list entitled "The Scabs of Eastern of the Strike of '89" (the "scab list"). Immediately beneath the title are quotations from Ralph Waldo Emerson and Emilio Zapata, as well as a piece by Jack London called "Ode to a Scab." (See Am. Compl. Ex. A.) The Amended Complaint charges that the Defendants distributed this list to air carriers, ALPA members, and others in the airline industry, "intend[ing] to cause each person on the list to be deprived of seniority rights, denied employment, discriminated against and subjected to physical, psychological and emotional injury." (Am. Compl. ¶ 25.)

The Amended Complaint also alleges that the Defendants failed to enforce ALPA's "Fragmentation Policy." Under this policy, ALPA pilot groups would work with their managements to provide Eastern ALPA pilots maximum protection during the liquidation of Eastern's assets. (Am.Compl. ¶ 29.) During transfers of Eastern's assets, ALPA allegedly failed to enforce the Fragmentation Policy faithfully. (Id. ¶¶ 32–33, 42–43, 46, 51.)

The original Complaint in this action was filed in state court on November 1 and removed to this Court on November 20, 1991. The twelve-count Complaint alleged violations of Florida Statute § 447.17 and the Florida RICO Act, interference with business relationships, libel and slander, and fraud.

On July 3, 1992, the Court denied Plaintiffs' Motion to Remand. (D.E. 34.) Shortly after this, Plaintiffs filed the Amended Com-

1. The Amended Complaint lists the Plaintiffs in five groups. Group I consists of an ALPA member who always honored the IAM strike; Group II contains ALPA members who honored the IAM strike until they crossed the lines after the August 5–6 instruction; Group III consists of ALPA members who honored the IAM strike for various periods between March 5 and August 5; Group IV contains ALPA members who did not honor the strike; and Group V consists of Eastern employees who were not members of ALPA. (Am.Compl. ¶ 3.)

plaint, retaining the state law claims and adding Count I as an additional duty of fair representation claim. Subsequently, the Defendants presented the Motions now before the Court.

## II. Discussion

The Defendants have broken into two camps to challenge the Amended Complaint: ALPA and its officers Henry Duffy and Randy Babbitt (the "ALPA Defendants"), and Defendants Charles H. Copeland, Edward J. Breen, Lewis Baldwin, Robert McMullen and Greg Petachenko (the "Chapter Defendants"). Both groups contend that the state law claims of the Amended Complaint are precluded by federal law. They also agree that the duty of fair representation claims should be dismissed, though for different reasons. The ALPA Defendants contend that the duty of fair representation claims should be time-barred by the statute of limitations. As an alternative to dismissal, the ALPA Defendants also assert that the action should be stayed pending similar litigation in Virginia, *Nellis v. Air Line Pilots Ass'n, Int'l*, No. 92–771–A (E.D.Va.). The Chapter Defendants maintain that they are not named in the duty of fair representation claims, so they should be dismissed entirely.

■ The Court will not grant a motion to dismiss unless without a doubt Plaintiffs cannot prove a set of facts which would entitle relief under the claim. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). The Court will also assume the Amended Complaint's allegations and incorporated exhibits are true, and construe the Amended Complaint in favor of the Plaintiffs. *See Burch v. Apalachee Community Mental Health Servs., Inc.*, 840 F.2d 797, 798 (11th Cir.1988), *aff'd*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

### A. *Preemption*

■ The Railway Labor Act (RLA), 45 U.S.C. §§ 151–188 governs the parties' rela-

tionship.[2] The RLA imputes a duty of fair representation that requires a union to treat all members of the collective bargaining unit fairly, adequately, and in good faith at all stages of bargaining. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). This duty is defined by federal law, which preempts the application of state substantive law in the area. *Vaca v. Sipes*, 386 U.S. 171, 188–90, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967); *Richardson v. United Steelworkers*, 864 F.2d 1162, 1166–67 (5th Cir.1989); *Williams v. Pacific Maritime Ass'n*, 421 F.2d 1287 (9th Cir.1970) (holding that under *Vaca* state civil conspiracy claims against union representatives for wrongful deregistration and discharge were preempted by federal law); 2 American Bar Association, *The Developing Labor Law* 1722–24 (Patrick Hardin ed., 3d ed. 1992).

■ The preemptive effect of federal law is not limited to the duty of fair representation, however. The supremacy of federal law bars state regulation where the particular local rule impedes the design of congressional legislation. "[C]ourts sustain a local regulation 'unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.'" *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)). State law is limited to governing activities that are of a peripheral concern to labor relations or "deeply rooted in local feeling and responsibility." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Indeed, state law may be barred where no federal legislation applies but "Congress intended that the conduct involved be unregulated because left 'to be controlled by the free play of economic forces.'" *Lodge 76, Int'l Ass'n of Machinists*

---

**2.** The Court recognizes that the Railway Labor Act constitutes a body of legislation that differs distinctly from the National Labor Relations Act. *See Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383–84, 89 S.Ct.

1109, 1118, 22 L.Ed.2d 344 (1969). Nevertheless, the NLRA is useful to construe the terms of the RLA, or to determine "the least unsatisfactory" judicial solution in the face of congressional silence. *Id.* at 391–93; 89 S.Ct. at 1123.

& *Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976) (quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971)).

 Because the doctrine may apply even where state and federal law do not directly clash, preemption analysis requires examining the "substance" of the state law claims rather than their "form." In the first instance, courts consider the defendants' behavior itself and whether this behavior is regulated by federal law, rather than the state cause of action assigned to the behavior. *See, e.g., Allis–Chalmers Corp.,* 471 U.S. at 211, 105 S.Ct. at 1911 (holding that the legal consequences of a collective bargaining agreement "must be resolved by reference to uniform federal law, whether such questions· arise in the context of a suit for breach of contract or in a suit alleging liability in tort."); *Peterson v. Air Line Pilots Ass'n, Int'l,* 759 F.2d 1161, 1170 (4th Cir.) (examining the "underlying dispute" for conflict with federal law), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).

Such a method best reflects congressional concern for uniform labor regulation. For example, in *Allis–Chalmers,* the Supreme Court faced the type of preemption issue where state law could "frustrate the federal scheme." The plaintiff, an employee, sued his employer and insurer using a state law action for bad faith handling of an insurance claim. However, the employee's labor union had a collective-bargaining agreement with the employer which itself had a grievance procedure for such situations. Despite sounding in tort, the state claim relied on contract interpretation for its resolution. Though the local regulation did not directly conflict with federal law, it could potentially upset the labor· law scheme envisioned by Congress, in which collective bargaining agreements would receive relatively uniform, federal court interpretation. *See* 29 U.S.C. § 185(a); *Allis–Chalmers Corp.,* 471 U.S. at 209–210, 105 S.Ct. at 1910–11. Thus the state law claim was precluded.

Applying this method to the present case, the Court distills the basis of the state law claims. Despite their various legal categorizations, the state law claims are all grounded on the first twenty-six paragraphs of the Amended Complaint. These claims include an action for permanent injunctive relief, (Am.Compl. ¶ 57), violations of Fla.Stat. § 447.17, (*id.* ¶¶ 60, 63), interference with business relationships, (*id.* ¶ 66), Florida RICO violations, (*id.* ¶¶ 79, 83, 86), and fraud, (*id.* ¶¶ 90, 93), as well as libel and slander, (*id.* ¶¶ 69, 74). At the root of these claims are two forms of behavior: misrepresentations to certain Plaintiffs that they should or should not return to work, (*id.* ¶¶ 17–21); and the creation and publication of the scab list, (*id.* ¶¶ 22–26).

1. Misrepresentation and the Duty of Fair Representation

To a great degree, the Court has already determined that state law claims based on misrepresentations to certain Plaintiffs that they should or should not return to work are barred by the duty of Fair Representation. In its Order on Motion to Remand, the Court stated:

> Where the complaint alleges: [1] that ALPA made misrepresentations to members who had affirmatively placed decisions related to the sympathy strike in ALPA's hands; and [2] union conduct that is adverse to the labor protective provisions contained in the collective bargaining agreement, it is reasonable to conclude that the substance of the allegations relate to ALPA's duty of fair representation.

(Order of July 3, 1992, at 4–5.) These misrepresentations form the heart of Counts XII and XIII, the Amended Complaint's fraud claims. (Am.Compl. ¶¶ 93–100.) But because they fall within ALPA's duty of fair representation, they cannot form the basis of a state law claim of fraud.

The Plaintiffs nevertheless contend that state law causes of action are only barred where their resolution depends on the meaning of a collective bargaining agreement. However, this construction of the doctrine is far too cramped. Most obviously, both the Railway Labor Act and the National Labor Relations Act contain myriad provisions gov-

erning behavior beyond the collective bargaining agreement. For example, both Acts provide for the formation and administration of labor organizations. *See* 45 U.S.C. § 152 (Third, Fourth); 29 U.S.C. § 158(a).

■ Plaintiffs may argue more pointedly that the duty of fair representation and its attendant preemption are governed by the meaning of the collective bargaining agreement. However, this too is not entirely correct. To be sure, if a dispute concerns the terms of the collective bargaining agreement itself, the meaning of the agreement will be a matter of interpretation, which is based on federal law. *International Bhd. of Electrical Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *Allis–Chalmers Corp.,* 471 U.S. at 202, 105 S.Ct. at 1904. But since *Vaca v. Sipes,* the Supreme Court has directed that the duty of fair representation is mandated and governed by federal statute. The Court has consistently reaffirmed that principle. *See, e.g., United Steelworkers v. Rawson,* 495 U.S. 362, 372, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990) ("The duty of fair representation is ... a matter of status rather than contract"); *Breininger v. Sheet Metal Workers Int'l Assn. Local Union No. 6,* 493 U.S. 67, 73, 110 S.Ct. 424, 429, 107 L.Ed.2d 388 (1989) ("We have long recognized that a labor organization has a statutory duty of fair representation...."); *cf. O'Neill,* 499 U.S. at 67, 111 S.Ct. at 1130 (holding that the duty of representation applies to contract negotiation as well as matters relating to the contract itself).

■ Under this understanding of the duty of fair representation, all claims based on the Defendants' alleged misrepresentations—whether cast as claims for fraud or otherwise—are precluded by federal law. The claims that the Defendants lied to induce the Plaintiffs to cross or to honor picket lines is nothing more than a claim that the union, as labor leader, treated the Plaintiffs arbitrarily and in bad faith. Such a claim clearly falls within the duty of fair representation, *see O'Neill,* 499 U.S. at 74–78, 111 S.Ct. at 1134–35, and is thereby governed exclusively by federal labor law.

### 2. The Scab List and Defamation Under Federal Labor Law

■ The second basis of the Plaintiffs' state law claims, the creation and publication of the scab list, does not fall squarely within the duty of fair representation. Notably, the Supreme Court has permitted state law to apply to certain actions applicable to behavior independent of the union's duties. *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (holding that an employee may sue union for malicious libel); *Farmer v. United Bhd. of Carpenters & Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (allowing union member to sue union for intentional infliction of emotional distress). These actions fit within the exception to preemption, carved out in *Garmon,* for matters peripheral to labor relations or rooted in local responsibility. 359 U.S. at 244, 79 S.Ct. at 779.

A careful analysis of the Plaintiffs' state law claims reveals that they do not fit within the *Garmon* exception, however. Using an analogy to the standards of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court has fashioned the exception to preemption for state law defamation actions. *Linn,* 383 U.S. at 65, 86 S.Ct. at 664. Such an action requires the defendants' statement to be factual, false, and issued with malice. *Id.; Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974).

*Letter Carriers* best illustrates the falsity requirement. There, a union published a "List of Scabs" specifying employees who refused to join. Along with the list, the union included the same passage from Jack London's "Ode to a Scab" that the Defendants allegedly published here. Relying on its earlier opinion in *Linn v. United Plant Guard Workers,* the Supreme Court held that these acts were protected forms of expression under federal labor law. Because the employees who were called "scabs" refused to join the union, the union's statements were literally true. Also, the more embellished epithets, including London's, were either true or simply not representations of fact. The mere tone of the union's

statements was not relevant. "*Linn* recognized that federal law gives a union license to use intemperate, abusive, or insulting language without fear of restraint or penalty if it believes such rhetoric to be an effective means to make its point." *Id.*, 418 U.S. at 283, 94 S.Ct. at 2781.

Beyond falsity, an action for defamation requires proof of malice—that the defendants either knew the falsity of their published statements or acted with reckless disregard for the truth. *Linn*, 383 U.S. at 65, 86 S.Ct. at 664. Under a lesser standard, "not only would the threat of state libel suits dampen the ardor of labor debate and truncate the free discussion envisioned by [the NLRA], but ... such suits might be used as weapons of economic coercion." *Id.* at 64, 86 S.Ct. at 664.

■ Considering the Supreme Court's guidance in *Linn* and *Letter Carriers*, the claims of many of the Plaintiffs must fail. First, to a great degree, the listing of the Plaintiffs on the scab list either is not a matter of fact, or is indeed factually correct. By common parlance, a "scab" is "one who works for less than union wages or on nonunion terms." *Webster's New Collegiate Dictionary* 1021 (1979); *see also* John P. Ludington, Annotation, *Defamation: Designation as Scab*, 65 A.L.R.4th 1000 (1988) (reviewing definitions of "scab" and collecting cases). Of course, crossing a picket line during a sympathy strike constitutes working on nonunion terms. Only one Plaintiff, Guido Colli, never crossed the picket lines.[3] The Group II Plaintiffs allegedly did not cross until after the union so instructed them; these Plaintiffs have a colorable claim under the theory that the Defendants acted in reckless disregard for the truth. All other Plaintiffs have no claim because they literally are scabs.

■ Furthermore, all of the claims related to the publication of the scab list are defective because they do not contend the Defendants acted with malice. The allegations relating to defamation state that the

Defendants listed the Plaintiffs as "The Scabs of Eastern," and published the list to others. (Am.Compl. ¶¶ 22–26.) The Defendants allegedly did this with the intent to harm the Plaintiffs. (*Id.* at 25.) However, there is no allegation that the list was made knowing its falsity or with reckless disregard for the truth.

To avoid the effect of *Linn* and *Letter Carriers*, the Plaintiffs contend that the labor law standards for defamation were not meant to apply to publications outside of a strike or organizational drive. Again, this reflects a cramped view of the relationship between the union and employees. *Letter Carriers* is again instructive. There, the union had already been selected by a majority of the bargaining unit. The union distributed its scab list as part of an ongoing organizational effort. 418 U.S. at 267, 94 S.Ct. at 2773. Nevertheless, that the union was merely shoring up its support rather than organizing or striking was immaterial to the Court's ruling. To the contrary, the Court explained that "[v]igorous exercise of th[e] right 'to persuade other employees to join' must not be stifled by the threat of liability for the overenthusiastic use of rhetoric or the innocent mistake of fact." *Id.* at 277, 94 S.Ct. at 2778 (quoting *NLRB v. Drivers Local 639*, 362 U.S. 274, 279, 80 S.Ct. 706, 709, 4 L.Ed.2d 710 (1960)).

The Plaintiffs' alternative argument, that federal preemption does not apply to publication to third parties, fails under the same principle. Surely in crafting *Linn* and its progeny the Supreme Court did not believe labor representatives would confine their views to the cloistered halls of the union. Consequently, all of the claims based on the publication of the scab list are deficient, and all of the state law claims must be dismissed.

B. *Leave to Amend*

■ In their response to the Motions, Plaintiffs requested leave to amend if the Court dismissed the state law claims. Because the policy of the court is to reach the substance of a complaint, leave to amend is

---

**3.** Notably, during oral argument, Defendants notified the Court that they had reached a settle-

ment with this particular Plaintiff.

freely given. Leave is denied only when the denial is reasonably necessary due to undue prejudice to the defendants or the futility of amendment. *See, e.g., Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040 (11th Cir. 1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987); *Griggs v. Hinds Junior College,* 563 F.2d 179 (5th Cir.1977).

As the Defendants note, this is the "third incarnation" of the Plaintiffs' complaint; one complaint in state court was voluntarily dismissed, and, after again filing, the Plaintiffs elected to amend their complaint following this Court's denial of remand. However, this is the first test of the sufficiency of the pleadings in actual litigation, so the Court is not convinced that amendment would be futile. The Plaintiffs have not proffered a second amended complaint, and the issue has not been ripe until today. Consequently, the Court will defer ruling on this request, pending Plaintiffs' proffer of the amendment and more complete argument by the parties.

## C. *Statute of Limitations*

Defendants contend that the Plaintiffs' claims based on the duty of fair representation are time-barred. At issue are two sets of claims. First are those based on allegations of misrepresentations that the Plaintiffs should or should not cross picket lines. These were originally designated as state law claims, but were subsumed by the union's representational duties. Second is Count I of the Amended Complaint, which is based upon allegations that ALPA failed to enforce the Fragmentation Policy.

■■■■ The parties agree that the applicable limitation period is six months for a claim based on the duty of fair representation under the Railway Labor Act. *See Smallakoff v. Air Line Pilots Ass'n, Int'l,* 825 F.2d 1544 (11th Cir.1987); *see also Del Costello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (holding that an employee's suit against the union

for breach of the duty of fair representation under the NLRA is governed by the six-month limitation period of 29 U.S.C. § 160(b)). The six-month limitation period "starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation." *Proudfoot v. Seafarer's Int'l Union,* 779 F.2d 1558, 1559 (11th Cir.1986). Therefore, the beginning of the limitation period has two components: the accrual of the cause of action itself, which occurs when the violation is completed, and the plaintiff's actual or constructive discovery of the violation.

■■■■ Based on this analysis, the claims based on allegations of misrepresentation are undoubtedly time-barred. The last activity relating to the union's misrepresentations occurred on November 23, 1989. (Am.Compl. ¶ 20.) However, the Complaint was filed in state court on November 1, 1991. This is a period of nearly two years, nearly one and one-half years over the limitation period. Under no stretch of inferences could the Plaintiffs have failed to realize they had been tricked over such a span of time. Consequently, these fair representation claims must be dismissed. Moreover, because the Chapter Defendants are not named in any other fair representation claim, they may be dismissed as well.

■■■■ The claims based upon the Fragmentation Policy are more problematic, however. These claims are based upon a series of events between June of 1989 and May 7, 1992. (Am.Compl. ¶¶ 31–50.) During this time, Eastern sold its assets to various other airlines, and ALPA allegedly failed to enforce its stated policy of preserving the seniority rights of Eastern pilots. The Amended Complaint is file-stamped July 22, 1992.[4] Thus, the Court faces two issues: first, whether the duty of fair representation did not accrue until the "final union action" on May 7, 1992; and second, whether ALPA's

---

4. Plaintiffs argue that, under the relation-back doctrine, the Court should base its statute of limitations analysis on the date of the original Complaint. However, in this instance, relation back requires that the amended claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original

pleading." Fed.R.Civ.P. 15(c). The original Complaint concerned only the misrepresentation and scab list. It did not even mention the fragmentation policy. Consequently, the amended claim does not relate back to the filing of the original Complaint.

earlier behavior constituted part of a continuing violation of its representational duty. Because neither of these questions can be answered negatively based on the pleadings alone, dismissal based on the statute of limitations is improper.

First, at this point in the litigation, the Court cannot conclude that Plaintiffs' claim for breach of the duty of fair representation ripened at a time prior to the May 7, 1992. The Amended Complaint alleges that "[o]n or about May 7, 1992, ALPA's executive board affirmed the decision of the Executive Committee asking that the Delta acquisitions of Eastern assets be treated as a merger" so the transaction would not have to comply with the Fragmentation Policy. (Am.Compl. ¶ 50.) It also states that "[s]ince the expiration of the Shugrue agreement on December 31, 1991, Defendants have failed and refused to make good faith efforts to implement the Fragmentation Policy as it applies to the transfers of assets by Eastern to other airlines."

Reading these allegations in the Plaintiffs' favor, the Amended Complaint states a claim for breach of the duty of fair representation within the limitation period. The action for breach of the duty of fair representation would accrue when Delta, the acquiring airline, rejected the Fragmentation Policy and, arbitrarily or through bad faith, ALPA failed to respond. ALPA's response was not complete until the ALPA executive board's ratification of the Committee decision. Because the action had not accrued, at least with respect to the Delta acquisitions, the limitation period had not yet begun.

■ Because the failure to enforce the Fragmentation Policy during the Delta acquisition may be part of a continuing failure to represent the Plaintiffs properly, the remainder of the claims in Count I also survive. Federal courts grant relief for earlier related acts where the last act in a continuing practice falls within the applicable limitation period. *Brenner v. Local 514, United Bhd. of Carpenters*, 927 F.2d 1283, 1295–96 (3d Cir. 1991); *Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1378–80 (7th Cir.1984); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380, 102

S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982) (noting a continuing violation diminishes staleness concerns that limitation periods address). Under this theory, the plaintiff may recover for all violations where the violations outside the limitation period are so closely related to those inside the period that they constitute one continuing infraction. *See Hendrix v. Yazoo City*, 911 F.2d 1102, 1103 (5th Cir.1990).

Under circumstances nearly identical to those alleged in the Amended Complaint, the District Court for the Eastern District of Virginia held that ALPA's disregard of the Fragmentation Policy could constitute such a "continuing violation." *Nellis v. Air Line Pilots Ass'n*, 815 F.Supp. 1522, 1537 (1993). There the plaintiffs presented the theory that because obtaining jobs for Eastern pilots with lateral seniority would be politically unpopular, ALPA's leadership systematically refused to enforce the Fragmentation Policy. Basing its decision substantially on the procedural posture of the case, the court refused to rule as a matter of law that ALPA's behavior did not constitute a continuous violation. *Id.*, 815 F.Supp. at 1537.

Using the reasoning in *Nellis*, the fair representation claims here should survive the statute of limitations defense, at least for now. As Defendants note, the Amended Complaint contains allegations concerning the Fragmentation Policy that are nearly identical to those in *Nellis*. It states that "ALPA's breach of its duty of fair representation was for the discriminatory purpose of favoring the interests of ALPA at the airlines which acquired Eastern assets over the interests of the Eastern pilots represented by ALPA." (Am.Compl. ¶ 54.) It is also states that "ALPA's breach of its duty of fair representation is continuing...." (*Id.* ¶ 56.) Under these allegations, each of ALPA's failures to enforce the Fragmentation Policy was part of an overall scheme to ignore the Plaintiffs' rights. Considering the case's procedural posture, it is unreasonable to reject the continuing violation theory at this point.

**D.** *Stay Pending Resolution of* Nellis v. Air Line Pilots Ass'n

Finally, the ALPA Defendants seek a stay in this action pending the outcome of *Nellis*

*v. Air Line Pilots Ass'n, Int'l,* No. 92–771–A (E.D.Va.). *Nellis* is a class action. Its plaintiff-representatives are former Eastern pilots who went and remained on strike. As here, ALPA's enforcement of the Fragmentation Policy is at issue. The *Nellis* plaintiffs contend that the ALPA failed to represent the pilots' seniority interests fairly when Eastern began selling its assets.

 A stay of proceedings is generally in the court's discretion. It is based on a balancing test in which the movant bears the burden of showing either "a clear case of hardship or inequity" if the case proceeds, or little possibility the stay will harm others. *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). The Defendants have not convinced the Court that a stay is proper under this standard. It is true that a stay of this action could avoid conflicting orders. As the Court has already noted, the duty of fair representation extends to all employees. Rulings in *Nellis,* which involve ALPA as Defendant and a nearly identical basis for the duty of fair representation claim, would certainly construe what fair representation requires, as this Court must. However, there would not be a res judicata effect. Res judicata only applies "between the same parties and their privies." *Acree v. Air Line Pilots Ass'n,* 390 F.2d 199, 203 (5th Cir.), *cert. denied,* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968). Notably, the Plaintiffs here were expressly excluded from the class certified in *Nellis.* (Mem.Opp'n Ex. 3.) Moreover, as Defendants pointed out in oral argument, the remainder of this litigation may conclude fairly quickly. Consequently, the Court does not find the hardship or inequity needed to justify a stay.

### III. Conclusion

The Amended Complaint's state law claims are preempted by federal law. These claims are based on two types of behavior. One type, misrepresentations that induced some Plaintiffs to cross picket lines, is governed by the duty of fair representation. The other type, the publication of the scab list, is pre-cluded by federal protection of speech in the context of labor disputes.

The Amended Complaint's claim of breach of the duty of fair representation cannot be dismissed as time-barred, however. It contains allegations that ALPA violated its duty within the limitations period, and its claims that fall outside the limitation may form part of a continuing violation of ALPA's duty.

Finally, after considering the situation of this litigation and that in *Nellis v. Air Line Pilots Ass'n,* the Court does not deem a stay to be appropriate. Accordingly, after hearing argument of counsel, reviewing the record, and being otherwise fully advised, it is hereby

ORDERED AND ADJUDGED that the Motion to Dismiss brought by Defendants Charles H. Copeland, Edward J. Breen, Lewis Baldwin, Robert McMullen and Greg Petachenko is GRANTED, and that the Amended Complaint is DISMISSED as to these Defendants for all claims. It is further

ORDERED AND ADJUDGED that the Motion for an Order Dismissing the Amended Complaint or, in the Alternative, to Stay This Action brought by Defendants Air Line Pilots Association, Henry Duffy, and Randy Babbitt is GRANTED in part. All counts of the Amended Complaint relating to state causes of action are DISMISSED. This Motion is DENIED in all other respects. It is further

ORDERED AND ADJUDGED that the Plaintiffs shall have ten (10) days from the date stamped upon this Order to file a motion for leave to file a second amended complaint, with proper supporting documentation. *See* S.D.Fla.LR. 7.1 A, 15.1. In Plaintiffs' failure, the Court shall deem Plaintiffs' request withdrawn.

DONE AND ORDERED.