William B. MANN, Jr., et al., Plaintiffs,

v.

AIR LINE PILOTS ASSOCIATION, et al., Defendants.

No. 93–0983–CIV.

United States District Court, S.D. Florida, Miami Division.

Feb. 18, 1994.

James L. Linsey, Cohen, Weiss & Simon, New York City, Robert T. Kaufman, Stearns, Weaver, et al., Miami, FL, for defendants.

Jonothan Rosner, Myles J. Tralins, Tralins & Associates, Miami, FL, for plaintiffs.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

EDWARD B. DAVIS, District Judge.

BEFORE THE COURT is Defendants' Motion to Dismiss (D.E. 27). The plaintiffs filed a response, and the defendants subsequently filed a reply. The Court heard oral argument on the motion on February 2, 1994, after which the plaintiffs filed a supplemental response to the defendants' motion to dismiss. For the reasons discussed below, the Court will grant the motion and dismiss the complaint.

### I.  Standard of Review

Courts do not grant motions to dismiss unless they are convinced that the plaintiffs cannot prove a set of facts that would entitle them to relief under the claim. *See SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988), *cert. denied, Peat Marwick Main & Co. v. Tew*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). In analyzing motions to dismiss, courts assume that the allegations in the complaint and incorporated exhibits are true, and construe the complaint in favor of the plaintiffs. *See Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797, 798 (11th Cir.1988), *aff'd sub. nom., Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

### II.  Background

On May 24, 1993, the plaintiffs filed a two-count complaint in this Court alleging two counts of federal RICO violations by the defendants. The plaintiffs are flight deck operating crew members employed by Eastern Airlines ("Eastern") between March 1,

1989, and January 18, 1991. (Compl. ¶ 3). The lead defendant, Air Line Pilots Association ("ALPA"), is the labor union that represented the plaintiffs during the Eastern strike in 1989. (See Compl. ¶ 4). ALPA is an unincorporated labor organization which, at all times relevant to this case, has served as the collective bargaining representative under the Railway Labor Act, 45 U.S.C. §§ 151–188, for the plaintiffs. ALPA has a separate governing body for the pilots of each carrier that it represents, and that body is called the Master Executive Council ("MEC"). The individual defendants in this case were either officers of ALPA or members of ALPA's Executive Board during the period in which the plaintiffs complain of wrongdoing.[1]

The plaintiffs in *Mann* seek damages for violations of RICO's civil provisions alleging that the defendants participated in a scheme to defraud them. The plaintiffs allege that because they were employees of a small or financially troubled air carrier, ALPA more or less sacrificed their interests in order to protect the interests of employees of air carriers that were financially more stable. Specifically, Count I alleges that defendants ALPA, Henry A. Duffy ("Duffy"), and J. Randolph Babbit ("Babbit") violated Section 1962(c) of RICO, 18 U.S.C. § 1962(c), by engaging in a pattern of racketeering activity. Count II alleges that ALPA, Duffy, Babbit, the ALPA Executive Board members (the other defendants in the case), and others violated Section 1962(c) of RICO by conspiring to engage in a pattern of racketeering activity. (Compl. ¶¶ 117–23).

In support of their allegations that the defendants initiated a scheme to defraud them, the plaintiffs allege the following: that ALPA had a practice of abandoning members of small or financially troubled airlines

and denying them the rights to which they were entitled under ALPA's Constitution and By–Laws, ALPA's Merger and Fragmentation Policy,[2] and ALPA's collective bargaining agreement with Eastern ("CBA") (Compl. ¶ 7); that the scheme to defraud included representations transmitted by mail and wire (Compl. ¶ 8); and that the scheme to defraud was for the benefit of "active members employed by dominant and financially stable air carriers" (Compl. ¶ 9). The complaint points out relevant portions of the ALPA Constitution and By–Laws, ALPA's Merger and Fragmentation Policy, and ALPA's CBA with Eastern. (Compl. ¶¶ 10–24). The defendants seek dismissal of the complaint on the basis that the federal RICO claims are preempted by federal labor law and, in the alternative, that the RICO claims are not pled sufficiently.

This case is related to *Dunn v. Air Line Pilots Ass'n,* Case No. 91–2679–CIV–DAVIS, which currently is pending before this Court. In *Dunn,* the plaintiff flight crew members who were employed by Eastern during the strike in 1989 sued ALPA, officers of ALPA, the Chairman of the Master Executive Council, and the members of the Strike Committee of ALPA's Eastern Air Lines Chapter, alleging breach of the duty of fair representation and defamation.[3] Most of the *Mann* plaintiffs are also plaintiffs in *Dunn.*[4] The *Dunn* case seemingly is ready to proceed unimpaired into the discovery stage.

### III. Discussion

■ The initial issue for the Court's determination is whether the *Mann* complaint is preempted by federal labor law. Since the Court finds preemption, it will not consider whether the plaintiffs adequately alleged

---

1. For a more complete summary of the facts, see *Dunn v. Air Line Pilots Ass'n,* 836 F.Supp. 1574 (S.D.Fla.1993) (Order on Defendants' Motion to Dismiss).

2. Under this policy, ALPA pilot groups were supposed to work with their managements to provide Eastern ALPA pilots maximum protection during the liquidation of Eastern's assets.

3. The *Dunn* plaintiffs recently filed their third amended complaint.

4. The defendants assert that only 23 of the 653 *Mann* plaintiffs are not *Dunn* plaintiffs. These 23 plaintiffs were plaintiffs in a suit similar to *Dunn* against ALPA and other individual defendants in the Eastern District of Virginia. *See Nellis v. ALPA,* 815 F.Supp. 1522 (1993), *aff'd,* 15 F.3d 50 (4th Cir.1994).

their RICO claims in the complaint.[5] As this Court previously discussed in its Order on Motion to Dismiss in *Dunn v. Air Line Pilots Ass'n*, 836 F.Supp. 1574 (S.D.Fla.1993), the plaintiffs' and defendants' relationship is governed by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–188, which imputes a duty of fair representation that requires a union to treat all members of a collective bargaining unit fairly, adequately, and in good faith. *See Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). The duty of fair representation is granted by Section 2, Eleventh (a) of the RLA, 45 U.S.C. § 152, which grants an elected union the exclusive authority to represent all employees in a collective bargaining unit and which also imparts a corresponding duty on the bargaining representative. *See Nellis v. Air Line Pilots Ass'n*, 815 F.Supp. 1522, 1530 (E.D.Va.1993), *aff'd*, 15 F.3d 50 (4th Cir.1994). ALPA's statutory duty of fair representation, then, obligated it to "serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *United Steelworkers of America, AFL–CIO–CLC v. Rawson*, 495 U.S. 362, 372, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990); *see also, e.g., Teamsters Local Union No. 42 v. NLRB*, 825 F.2d 608, 611 (1st Cir.1987) (duty of fair representation forbids union from illegitimately favoring some of its members at the expense of other members).

██ The defendants argue that federal labor law and the duty of fair representation preempt the federal RICO allegations in the *Mann* plaintiffs' complaint. The defendants argue that, in essence, the *Mann* plaintiffs are alleging that ALPA treated them unfairly, favoring its other members at the expense of the plaintiffs, and that at its root the *Mann* complaint is a classic duty of fair representation claim. The Court generally agrees with the defendants' characterization of the plaintiffs' complaint. The complaint alleges facts that go to ALPA's representation of the plaintiffs, and it then alleges that ALPA's misrepresentations with regard to this representation constitute RICO violations. The plaintiffs, on the other hand, make an unsupported assertion that the facts "supporting the *Mann* Complaint's RICO claims are substantially different from the factual allegations supporting the *Dunn* Complaint's claim for breach of the duty of fair representation," (Plaintiffs' Mem. in Opposition to Defendants' Mot. to Dismiss Compl. 16); however, the Court finds that there is no appreciable difference in the fact allegations contained in the two complaints.

██ RICO claims for mail and wire fraud typically are preempted by labor law. *See generally MHC, Inc. v. Intern. Union, United Mine Workers of America*, 685 F.Supp. 1370, 1377–79 (E.D.Ky.1988) (explaining the nature of RICO and its relation to federal labor law). Numerous courts have enunciated the test for determining whether federal labor law preempts federal RICO claims. In *Brennan v. Chestnut*, the Eighth Circuit said that

> a RICO claim based on allegations of mail and wire fraud as predicate acts would be preempted if the underlying conduct falls within the exclusive jurisdiction of the NLRB because mail and wire fraud are 'generic' acts.... The mail and wire fraud statutes ... do not define fraud but rather leave that definition to other laws.... *If the court must look to the labor laws to define the fraud, then preemption applies.*

973 F.2d 644, 646 (8th Cir.1992)[6] (emphasis added); *see also, e.g., Talbot v. Robert Mat-*

---

**5.** The Defendants also argue that the *Mann* case should be dismissed because it should have been pled as one action with the *Dunn* action. Although there may be some merit to this claim splitting issue, the Court need not discuss it since it is dismissing the complaint based on preemption by federal labor law.

**6.** The Court recognizes that the Railway Labor Act constitutes a body of legislation that differs from the National Labor Relations Act. *See Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383–84, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969). However, the NLRA is useful to construe the terms of the RLA or to determine "the least unsatisfactory judicial solution in the face of congressional silence." *Id.* at 391–93, 89 S.Ct. at 1123.

*thews Distributing Co.*, 961 F.2d 654, 662 (7th Cir.1992) (holding that if the underlying conduct is wrongful only by virtue of the labor laws then the RICO claim is preempted); *McDonough v. Gencorp, Inc.*, 750 F.Supp. 368, 370 (S.D.Ill.1990) (ruling that if the alleged fraud is defined by looking at the labor laws then preemption applies). Hence, if this Court must look to labor laws to define the fraud alleged by the *Mann* plaintiffs, then preemption applies. This Court must look to federal labor law to evaluate the fraud alleged by the *Mann* plaintiffs, and therefore federal labor law does preempt the federal RICO claims. As the defendants argue, the plaintiffs' complaint deals with whether ALPA adequately and fairly represented them: it is a duty of fair representation claim that is not appreciably different from the claims in the *Dunn* complaint.[7]

Further, the *Mann* plaintiffs allege that the source of their right to fair treatment springs from the CBA, ALPA's Merger and Fragmentation Policy, and ALPA's Constitution and By–Laws.[8] (*See, e.g.,* Compl. ¶¶ 10–24.) The defendants cite a number of cases

that stand for the proposition that the Railway Labor Act preempts RICO claims whose source is traceable to rights arising under a collective bargaining agreement. In *Underwood v. Venango River Corp.*, the Seventh Circuit held that if the alleged wrongdoing would not be actionable in the absence of obligations contained in the collective bargaining agreement then there is preemption. 995 F.2d 677, 684 (7th Cir.1993). The Seventh Circuit concluded:

> Try as they might, the plaintiffs simply cannot overcome the fact that their RICO claim alleging generic wire and mail fraud depends solely upon an interception *of the rights created in the collective-bargaining agreement* because the severance pay and job security rights they seek to enforce originate in the CBA.

*Id.* at 685 (emphasis added); *see also id.* at 685 (saying, "As we have discussed above, the RLA preempts all minor disputes that may be resolved by interpretation or application of the CBA"). Similarly, in *Hubbard v. United Airlines, Inc.*, the Ninth Circuit observed that "it appears that federal labor law

---

7. The plaintiffs rely on *Landry v. Air Line Pilots Ass'n Intern., AFL–CIO*, 901 F.2d 404, 429 (5th Cir.1990), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), for the proposition that federal RICO claims are not preempted by the federal labor law duty of fair representation. *Landry* did not expressly discuss the preemption issue, and this Court, therefore, does not find it as persuasive as other cases that address the preemption issue directly. However, to the extent that *Landry* may implicitly allow federal RICO claims that are predicated upon misrepresentations to exist independently of duty of fair representation claims, this Court disagrees with such dictum. In *Dunn*, this Court held, consistently with the overwhelming weight of authority, that all claims "based on the Defendants' alleged misrepresentations—whether cast as claims for fraud or otherwise—are precluded by [the federal labor law duty of fair representation]." 836 F.Supp. at 1580 (holding that *state* law fraud claims are preempted by the federal labor law duty of fair representation); *see also Nellis*, 15 F.3d 50, 51 (holding that the lower court was correct in dismissing state law claims based on misrepresentations because they were preempted by the federal labor law duty of fair representation).

8. Counsel for the *Mann* plaintiffs, during oral argument, generally admitted that the complaint relied on these documents. However, counsel sought to distinguish the *Mann* complaint from the *Dunn* complaint by contending that the *Dunn*

complaint alleges breach of the duty of fair representation based on rights created in these documents but that in *Mann* the allegation is that ALPA made certain representations to the plaintiffs saying that it would protect the plaintiffs' rights under these documents but then breached the actual promise to protect the rights. Counsel tried to liken the *Mann* case to one of fraudulent inducement, as opposed to breach of contract (which is how counsel described *Dunn* ). The Court concludes that the distinction that Plaintiffs' counsel sought to establish does not help avoid a dismissal of the *Mann* complaint. Counsel for the plaintiffs argued that the defendants breached promises to protect the plaintiffs' rights as listed in the CBA, Merger and Fragmentation Policy, and ALPA's Constitution and By–Laws; however, counsel did not direct the Court to the source of the plaintiffs' rights not to be fraudulently induced (i.e., the plaintiffs' rights to force ALPA to keep its promises). If the source of the rights is state common law, then preemption obviously applies, as this Court discussed in *Dunn* and as the Eastern District of Virginia discussed in *Nellis*. If the source of the plaintiffs' rights is the CBA, the Merger and Fragmentation Policy, and ALPA's Constitution and By–Laws, then preemption still applies, as is discussed in the body of this Order as well as by other courts in such cases as *Underwood v. Venango River Corp.*, 995 F.2d 677 (7th Cir.1993).

was intended to provide the exclusive remedy for generic fraud claims relating to rights under [a] CBA." [9] 927 F.2d 1094, 1098 (9th Cir.1991). In essence, the holdings in these cases are simply a subset within the broad rule that federal RICO claims are preempted if the court must look to federal labor law to determine whether fraud has occurred. Hence, these cases further support dismissal of the *Mann* complaint on the basis of pre-emption.

The *Mann* complaint alleges acts that fall under the duty of fair representation. The complaint essentially alleges misrepresentation and fraud pertaining to the plaintiffs' rights under the CBA, the Merger and Fragmentation Policy, and ALPA's Constitution and By–Laws. The breach of this duty is cognizable only under federal labor law, more particularly, the RLA, not under federal RICO law. Numerous courts have articulated important policy reasons for addressing these sorts of claims within the framework of labor laws, *see, e.g., MHC, Inc.,* 685 F.Supp. at 1377–80, and these policies further support this Court's finding that the *Mann* plaintiffs' claim is cognizable only under federal labor law.

Having found that dismissal is necessary based on federal labor law preemption, the Court will not consider whether the RICO claims were sufficiently pled. Accordingly, it is

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss is GRANT-

ED.[10] This case is DISMISSED. The case is closed and any pending motions are moot.

DONE AND ORDERED.

---

**9.** Like claims arising from the CBA, claims and allegations predicated upon the Merger and Fragmentation Policy also are subsumed by the federal duty of fair representation. *See Nellis v. Air Line Pilots Ass'n,* 815 F.Supp. at 1534 (holding that in the fact circumstances of that case, a valid duty of fair representation claim must be based on a showing that ALPA breached the terms of its Merger and Fragmentation Policy).

**10.** A handful of *Mann* plaintiffs are not *Dunn* plaintiffs. This handful of plaintiffs are individuals who did not cross the picket lines during the Eastern strike but rather observed the strike, and they litigated their duty of fair representation claim against ALPA in *Nellis.* Counsel for both parties agreed during oral argument that these plaintiffs' duty of fair representation claim against ALPA and, for that matter, all *Nellis*

defendants is barred by res judicata. *See, e.g., Pelletier v. Zweifel,* 921 F.2d 1465, 1500–01 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991) (discussing the elements of res judicata). That is, these plaintiffs litigated their duty of fair representation claim against ALPA in *Nellis,* and in *Nellis* the United States District Court for the Eastern District of Virginia dismissed these plaintiffs' duty of fair representation claims on summary judgment. In short, even though the parties in *Mann* and *Dunn* differ slightly, this Court, upon review of the case and upon listening to oral argument on the present motion, has concluded that no *Mann* plaintiffs have cognizable claims. For that reason, the plaintiffs will not be granted leave to amend their complaint.