John E. MORGAN, Plaintiff, Appellant,

v.

**MASSACHUSETTS GENERAL
HOSPITAL, Defendant,
Appellee.**

Nos. 89–1624, 89–1625.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1989.

Decided April 20, 1990.

Robert C. Johnson, Jr., with whom Johnson & Jenkins, was on brief for plaintiff, appellant.

James H. Wexler and Jeffrey F. Beatty, with whom Kotin, Crabtree & Strong, were on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, and TORRUELLA, Circuit Judge, and COFFIN, Senior Circuit Judge.

TORRUELLA, Circuit Judge.

John E. Morgan appeals from the decision of the United States District Court for the District of Massachusetts granting Massachusetts General Hospital's motion for summary judgment and motion to dismiss. 712 F.Supp. 242. Massachusetts General Hospital ("MGH" or "Hospital") cross-appeals from the district court's failure to award attorney's fees.

Morgan originally sued two of his superiors individually, as well as MGH, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. The claims against the individual superiors were dismissed on April 8, 1986. He also brought a claim under 42 U.S.C. § 1985 alleging conspiracy to violate his civil rights as well as several state law tort claims, which were similarly dismissed on April 8, 1986. Summary judgment was granted for all remaining Title VII and § 1981 claims against the Hospital, and the district court then declined to award MGH attorney's fees.

For the reasons stated below, we affirm the decision of the district court with respect to the appeal, and remand for a statement of reasons with regard to the cross-appeal.

I. FACTUAL BACKGROUND

In 1972, John E. Morgan, a black male, began his employment at MGH as an elevator operator. In 1977, he became a general service aide, a position he held until his termination in December, 1984. His duties included mopping and waxing floors, and he generally worked from 6 a.m. to 2 p.m., although a schedule was posted near where he signed in for work, and he was expected to check it regularly. Throughout his employment, Morgan had a poor attendance record, and MGH claims that it could have terminated his employment for that reason, although there is no allegation that his attendance record was actually a factor in his discharge.

In 1974, Morgan and several other employees became interested in forming a union, but their most active organizing effort was not until 1981–1982. By the end of

1983, most of the union activity had ended, and, in any event, Morgan did nothing for the union after 1983. Morgan has stated that he does not know of any employee who was fired for union activity.

In early December, 1984, a hispanic male (hereafter referred to as "co-worker") began working in Morgan's department. Morgan was assigned to "show him the ropes." Morgan alleges that by December 5, 1984, he became aware, or at least believed, that the co-worker was a homosexual, because of sexual comments that the co-worker made to him in the restroom. Sexual harassment forms the basis for Morgan's Title VII claim.

On or about December 11, 1984, Morgan and another employee, Robert Peterson, bought alcoholic beverages during their lunch break, drank the beverages, and then went inside the Hospital, where they were joined by the co-worker. While the three employees were in the lobby, Peterson asked the co-worker if he was a homosexual, and a verbal argument ensued. The co-worker reported the incident to a supervisor, Michael Picardo. Picardo investigated the complaint by talking with both Peterson and Morgan. Morgan did not, at that time, report sexual harassment to Picardo, nor did he complain when no action was taken. Peterson was subsequently suspended.

At a Christmas party on December 20, 1984, Morgan alleges that he was sexually harassed. He claims that the co-worker asked him to dance with him, and started to "pull on him." Shortly thereafter, Morgan left the party. The next day, Morgan told his supervisor, Agnes Phillips, about the Christmas party incidents. He also told her that the co-worker sometimes stood behind him as he was mopping, causing him to bump into the co-worker. Phillips told Morgan that she would discuss the matter with her supervisor, Winthrop Huyghue.

Since Huyghue was not at work that day, Phillips and another supervisor examined the posted work schedule and determined that Morgan and the co-worker were not scheduled to work together again until December 26th. Thus, they decided to defer action until that time. She explained this to Morgan. On December 24, 1984, Phillips told Huyghue that Morgan had threatened to "punch out" the co-worker if the Hospital failed to take action, and that she had told Morgan that fighting was grounds for dismissal.

On December 24, 1984, Morgan reported for work, erroneously believing that he had to work that day. After being told that he was not scheduled to work, he left the Hospital through the Fruit Street door, where he encountered the co-worker. According to Morgan, the co-worker was walking towards him with his hand raised to the level of Morgan's groin. Morgan claims that he raised his hand to block the co-worker's hand, and, in so doing, struck the co-worker. The co-worker was treated for three fractures in his face. Morgan is 6'2" and weighs about 280 pounds; the co-worker is 5'5" and weighs about 138 pounds. In contrast to Morgan's assertions, the co-worker claims that he met Morgan in the corridor of the hospital, and that Morgan asked him to step outside. The co-worker alleges that Morgan then struck him without provocation.

Huyghue met with the co-worker, and then met with the Hospital's Employee Relations Office, which recommended that the matter be investigated further. Morgan was placed on investigatory suspension, with pay. Huyghue then met with Morgan on December 25th. Morgan was subsequently fired, because, according to Huyghue, there was no substantiated evidence that Morgan's allegations were true, and even if they were, they did not justify an assault. Furthermore, Huyghue contends that Morgan should not have disregarded Hospital policy, and that there was evidence that the assault was premeditated.

After being informed of his termination, Morgan submitted a grievance statement to the Grievance Committee. In his statement, Morgan alleged only suggestive mannerisms on the part of the co-worker, and made no claim that termination was based on his race, past union or other Hospital activities, and/or complaints of other

sexual harassment. After a hearing, the Committee determined that the assault was clearly work-related and was unwarranted, and recommended that the termination be sustained.

## II. PROPRIETY OF ENTERING SUMMARY JUDGMENT

It is well established that, on appeals from summary judgment, this Court will view the facts in the light most favorable to the non-movant, in this case to Morgan, and indulge in all reasonable inferences favorable to him. *E.g., King v. Williams Industries, Inc.,* 724 F.2d 240, 241 (1st Cir.), *cert. denied,* 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984); *Metropolitan Life Insurance Co. v. Ditmore,* 729 F.2d 1, 4 (1st Cir.1984); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Because, after careful review, we can discern no genuine issue as to a material fact, we find that the decision of the district court granting summary judgment was proper. Fed.R.Civ.P. 56(c). We analyze each issue as to which summary judgment was granted *seriatim.*

### A. *Morgan's Discrimination Claims*

In cases alleging discriminatory firing, plaintiffs initially have the burden of establishing a *prima facie* case of racial discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If this procedural bulwark is successfully surmounted, the gauntlet is then passed to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's dismissal. *Id.* at 802–03, 93 S.Ct. at 1824. If defendant is successful in doing so, the plaintiff is then charged with the responsibility of proving that defendant's stated reason is only a pretext concealing an underlying racially discriminatory motivation. *Id.* at 804, 93 S.Ct. at 1825.

Here, we will assume, without deciding, that Morgan met his *prima facie* burden, noting only that "a reviewing court 'need not linger long over the question of whether [the plaintiff] in fact established a *pri-ma facie* case' if the defendant has met its burden of articulating a legitimate non-discriminatory reason for its actions." *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d 64, 70 (1st Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984) (quoting *Sweeney v. Research Foundation of State University of New York,* 711 F.2d 1179, 1184 (2d Cir.1983)) (cited in *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 107 (1st Cir.1988)). *See also United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). As discussed below, we believe that MGH has successfully articulated such a reason. Consequently, the dispositive question is simply whether plaintiff has raised an issue of fact concerning whether the non-discriminatory reason articulated by defendant is a pretext concealing an underlying racially discriminatory motivation.

### 1. *Articulation of Non–Discriminatory Reason for Discharge*

Under *McDonnell Douglas,* MGH is not required to demonstrate that its actions were in fact motivated by a nondiscriminatory reason, but instead must show only that a legitimate reason existed. "Defendant's burden is one of production, not persuasion. It must only articulate a valid reason." *Oliver v. Digital Equipment Corp.,* 846 F.2d at 108. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. This burden of production can be met "by introducing admissible evidence that 'raises a genuine issue of fact as to whether [defendant] discriminated against the plaintiff.'" *Oliver v. Digital Equipment Corp.,* 846 F.2d at 109 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)).

There can be no question that MGH articulated a legitimate reason for its discharge of Morgan. MGH submitted to the district court affidavits from each individual involved in the decision to terminate Morgan's employment. None of the affidavits were contested, and they each stated that no consideration was ever given to

Morgan's race, union activities [1] or allegations of sexual harassment. Moreover, the Hospital conducted an investigation, interviewed all parties, and concluded that Morgan's assault was apparently intentional, and consequently unacceptable. This decision was reviewed and affirmed both by the Grievance Committee and by Dr. J. Robert Buchanan, General Director of MGH. Nothing submitted, even viewed in the light most favorable to Morgan's position, supports a conclusion that consideration was ever given to Morgan's race, union activities, or allegations of sexual harassment. MGH stated a legitimate, nondiscriminatory reason for Morgan's discharge when it alleged that his employment was terminated solely because, in a work-related dispute, he struck and seriously injured a co-worker, thus disrupting the Hospital's routine. We find that this detail goes beyond that required to sustain MGH's burden of articulating a nondiscriminatory purpose.

Before moving on, we pause briefly to address two peripheral issues raised by Morgan. First, he alleges that MGH could not base its decision to fire him on the assault, because it could not lawfully terminate an employee for conduct occurring off company property and outside the employment context. Thus, the argument goes, MGH failed to articulate a legitimate reason for dismissing him, and summary judgment was consequently improper.

Defendant responds by contending that the dispute was work-related because it arose out of an alleged work incident, and furthermore it occurred just outside of the Hospital, and interfered with, and disrupted its business. We believe that this is enough. In each of the cases cited by defendant for the proposition that off-duty conduct does not give rise to a right to terminate employment, *Ralph's Grocery Co.*, 77 Lab.Arb. (BNA) 867, 870 (1981); *Nugent Sand Co.*, 71 Lab.Arb. (BNA) 585,

586 (1978); *Indian Head, Inc.*, 71 Lab.Arb. (BNA) 82 (1978), an explicit exception is delineated which is applicable here.

> Arbitrators have long held that what an employee does on his own time and off Company premises is not a proper basis for disciplinary action *unless it can be shown that employee's conduct has an adverse effect on the company's business or reputation, the morale and well-being of other employees, or the employee's ability to perform his regular duties.*

*Indian Head, Inc.*, 71 Lab.Arb. (BNA) at 85 (emphasis added). These were exactly the concerns which the Hospital attempted to address by dismissing the appellant. As the affidavit of Huyghue stated, "Mr. Morgan's assault had disabled [the co-worker] and disrupted the [Environmental Services Department]'s staff and operations ... [T]he ESD could not function if it were considered to condone assaults upon fellow employees."

■ The second argument raised by appellant may be similarly rejected. Appellant contends that, under Fed.R.Civ.P. 56(e), the district court erred by relying on affidavits, such as that of Huyghue, which allegedly contained inadmissible hearsay. He makes a similar argument about a job counseling report, and the report of the Grievance Committee, on the grounds that they should have been disallowed because they had not been authenticated.

It is not the case that all out of court statements are inadmissible as hearsay. The Federal Rules of Evidence make it quite clear that such statements are inadmissible only if offered for the truth of the matter therein. Fed.R.Evid. 801(c). We agree with the district court's decision permitting the introduction of the documents, on the ground that they were admitted, not for proving the truth of their contents, but to prove what steps were taken to investigate the circumstances surrounding the as-

---

**1.** It is, of course, questionable whether the district court had jurisdiction to hear any cause of action based on an allegation of unfair labor practices, which is essentially what appellant argues in his claim of discrimination by reason of union activity. *See infra* pp. 193–94. We note also that this is not a case where a labor law question emerged as a collateral issue to a suit brought under an independent remedial ground. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 85, 102 S.Ct. 851, 860, 70 L.Ed.2d 833 (1982).

sault. For example, the affidavit of Huyghue, which recites statements made to him during his investigation of the fight between appellant and the co-worker, was not offered to prove any particular version of the fight. Instead, the submitted affidavit was offered only to demonstrate what steps Huyghue took, and what information he received during his investigation.

On the basis of the arguments made by appellee, MGH, we find that the employer articulated a legitimate, non-discriminatory reason for its action. This being the case, the burden shifts back to the appellant to prove by a preponderance of the evidence "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). In other words, the appellant must demonstrate that the reason articulated by the Hospital "was a pretext for discrimination." *Johnson v. Allyn & Bacon, Inc.*, 731 at 70 (citing *Texas Dept. of Community Affairs*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94). This burden cannot be met merely by refuting or questioning the articulated reason. *White v. Vathally*, 732 F.2d 1037, 1042 (1st Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984). It is this burden which appellant is unable to sustain, as the district court correctly concluded.

### 2. *Pretextuality*

■ Appellant's only attempt to show pretext lies in his argument that he was discriminated against because he was discharged, while the co-worker was not. While we agree with the district court that it is possible for a plaintiff to demonstrate pretextuality by presenting evidence that other, non-black employees who were similarly situated were not discharged while the plaintiff was, *Menzel v. Western Auto Supply Co.*, 848 F.2d 327, 329 (1st Cir. 1988), we cannot agree with appellant that

he and the co-worker were similarly situated. The evidence presented to the district court demonstrated that the Hospital had determined that Morgan, rather than the co-worker, instigated the altercation. Consequently, evidence that the co-worker was not discharged is insufficient to sustain appellant's burden with regard to pretextuality.

Nor is it enough for appellant to present evidence suggesting that the employer wrongly concluded that appellant struck the co-worker without provocation or justification. As the district court so dexterously explained, "evidence contesting the factual underpinnings of the reasons for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question." *See Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987). Moreover, the appellant cannot prove pretext solely by contesting the objective veracity of appellee's action. *Menard v. First Security Services Corp.*, 848 F.2d 281, 287 (1st Cir. 1988). Consequently, as the district court concluded, "[e]ven if Morgan were able to demonstrate that the Hospital mistakenly believed he was the aggressor and that, in discharging Morgan, the Hospital acted on matters of purely private concern, these facts would not tend to show that *race* was a motivating factor in Morgan's discharge." *See also Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 255 (1st Cir.1986).

Morgan offered no evidence which tended to show that his discharge was based on racially discriminatory reasons rather than on his role as a protagonist in the altercation with the co-worker. Because appellant therefore fails to raise a genuine issue as to whether the Hospital's reason for discharge was a pretext for discrimination, we conclude that the district court acted appropriately in granting summary judgment on appellant's discriminatory discharge claim.[2]

---

**2.** Appellant also argues that, since the Hospital's motivation in discharging him was at issue, the district court erred in deciding the case through the use of affidavits. Appellant also contends that summary judgment is unavailable when state of mind is at issue. This Court has held

that the use of affidavits, as well as summary judgment, is permissible in cases alleging discriminatory motivation. *E.g., Dea v. Look*, 810 F.2d 12 (1st Cir.1987). Given the circumstances of the instant case, the district court acted appropriately.

### B. Sexual Harassment Claims

Appellant also appeals from the district court's grant of summary judgment against him on his Title VII sexual harassment claims.[3] While there is a cause of action for sexual harassment under Title VII, we agree with the district court's conclusion that appellant failed to demonstrate that there was a genuine issue of material fact, and consequently conclude that summary judgment was appropriate.

In making the determination of whether there was conduct rising to the level of actionable sexual harassment, this Court will be guided, although not bound, by the guidelines promulgated by the Equal Employment Opportunity Commission ("EEOC"), 29 C.F.R. 1604.11. *General Electric Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 410–11, 50 L.Ed.2d 343 (1976), *reh'g denied*, 429 U.S. 1079, 97 S.Ct. 825, 50 L.Ed.2d 799 (1977); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). *See also Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The guidelines define actionable sexual harassment as follows:

> (a) Harassment on the basis of sex is a violation of § 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Clearly, the first two categories are inapplicable, because they require that the perpetrator of the alleged harassment have supervisory authority over the plaintiff. The co-worker had no such standing, and appellant never contests this conclusion. Instead, it is the third category which, appellant asserts, has application.

Morgan essentially argues that both Huyghue and Phillips held positions of authority over him, and that, once they were given notice of sexual harassment by the co-worker, they had a legal duty to take immediate remedial action. He contends that such notice was given to them as early as December 11, 1984, and that by permitting the harassment to continue, the Hospital acquiesced to the harassment. Finally, appellant asserts that he need not demonstrate that he was dismissed because he complained about sexual harassment, because a Title VII violation occurs even in the absence of employer retaliation against a victim of sexual harassment.

While some sexual harassment can certainly be equated with employment discrimination within the purview of Title VII, not all sexual harassment is actionable. Under the teaching of *Meritor*, conduct rises to the level of actionable sexual harassment only when it is:

> sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment."

*Meritor Savings Bank v. Vinson*, 477 U.S. at 67, 106 S.Ct. at 2405 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982)). We agree with the district court that the conduct complained of in this case was neither sufficiently severe nor adequately pervasive to amount to the type of conduct deemed to be actionable under Title VII.

Before the Christmas party on December 20, 1984, Morgan can point to only two instances of "harassment" by the co-worker. He alleges only that the co-worker

---

3. We note, in passing, that appellant originally brought a claim of sexual harassment under 42 U.S.C. § 1981 as well as under Title VII. He does not appear, however, to contest the ruling of the district court that § 1981 does not apply to cases of alleged sex discrimination. *See Me-* *lanson v. Rantoul*, 421 F.Supp. 492, 499 (D.R.I. 1976), *aff'd on other grounds*, 561 F.2d 409 (1st Cir.1977). Since the validity of that ruling is not properly before us, we decline to address it here.

stood behind him while he mopped, causing appellant to bump into the co-worker, and that the co-worker stood next to him in the restroom and "peeped" at appellant's "privates." He also asserts that the co-worker "hung around him a lot." But, as the district court observed, Morgan himself did not perceive this conduct as being problematic. The only other event of which appellant now complains was at the Christmas party, when the co-worker asked appellant to dance. After examining this conduct, we cannot conclude that the district court was clearly wrong in determining that the conduct was not of the type that would interfere with a reasonable person's work performance, nor would it seriously affect a reasonable person's psychological well-being, at least to the extent required by Title VII. *See Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 620 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Moreover, the facts disclose far less objectionable circumstances than those for which relief has previously been afforded. *E.g., Meritor Savings Bank*, 477 U.S. at 60–61, 106 S.Ct. at 2402 (repeated sexual demands by supervisor led to 40–50 instances of intercourse); *Priest v. Rotary*, 634 F.Supp. 571 (N.D.Cal.1986) (plaintiff subjected to sexual fondling, conduct, and exposure by supervisor).[4]

After reviewing the record, we cannot conclude that the district court erred in granting summary judgment on the issue of sexual harassment.

### C. Retaliatory Discharge

Appellant's next argument is that the fact that he engaged in union organizing, and as part of those efforts opposed discriminatory treatment of minorities at the Hospital, together with the fact that he complained about sexual harassment, constitutes a *prima facie* case under section

704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). Section 704 provides, in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter.

42 U.S.C. § 2000e–3(a).

■ Appellant's argument that union activities can be the subject of a section 704 action falls far short of one to which we are inclined to devote much time. He essentially claims that he was not promoted for thirteen years because of his union activities within the Hospital. We think it safe to say that, for a remedy to be provided under section 704, there must be employer opposition to some protected expression. Despite a diligent search, this Court has been unable to locate any case holding that union activities can be the basis for a section 704 finding, and we decline to be the first court to so hold.

Within the vast body of law governing labor relationships, there are many statutes protecting union activities. Those statutes, and the cases interpreting them, hold that, as a general rule, the National Labor Relations Board (NLRB) has "exclusive jurisdiction to find, prevent, and rectify unfair labor practices...." *New Mexico Dist. Council of Carpenters, AFL–CIO v. Mayhew Co.*, 664 F.2d 215 (10th Cir.1981). *See also Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 *reh'g denied*, 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120 (1971); *International Longshoremen's Assoc., Local 1416, AFL–CIO v. Ariadne Shipping Co.*, 397 U.S. 195, 200, 90 S.Ct. 872, 874, 25 L.Ed.2d 218 (1970) ("The jurisdiction of the National Labor Relations Board is exclusive and pre-

---

4. We note, finally, that even if it could be argued that the co-worker's actions rose to the level of sexual harassment, the district court did not err in concluding that there was no genuine factual dispute over whether the Hospital condoned the actions. Although there is some evidence that Morgan discussed the co-worker's conduct with one of his supervisors on December 11, 1984, he did not request that any action

be taken, and he did not complain when the matter was not further pursued. It was not until after the Christmas party that he asked his supervisor, Agnes Phillips, to intervene. Although the Hospital did begin an investigation, there was no chance for remedial action to be taken because of Morgan's almost immediate discharge after the altercation with the co-worker.

emptive as to activities that are 'arguably subject' to regulation under § 7 or § 8 of the [National Labor Relations] Act"); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); *Garner v. Teamster's Union*, 346 U.S. 485, 490–491, 74 S.Ct. 161, 165–66, 98 L.Ed. 228 (1953). Although some exceptions to the exclusivity of NLRB jurisdiction have been created by Congress, these exceptions forge no inroads into the traditional function of the NLRB: identification and remedying of unfair labor practices. *Compare International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.*, 342 U.S. 237, 241–42, 72 S.Ct. 235, 238, 96 L.Ed. 275 (1952) (holding that, in enacting § 303 of the Labor Management Relations Act, 29 U.S.C. § 187(b), Congress intended to provide independent remedies: one directed at ending unfair labor practices, the other at providing for recovery of damages) and *Motor Coach Employees v. Lockridge*, 403 U.S. at 298, 91 S.Ct. at 1923 (actions under § 301 of the Taft–Hartley Act, 61 Stat. 156, to enforce collective bargaining agreements are judicially cognizable because the legislative history makes it clear that Congress made a conscious decision to leave the enforcement of collective agreements to ordinary legal processes). *See also Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 513, 82 S.Ct. 519, 525, 7 L.Ed.2d 483 (1962).

This case does not present a situation where Congress has made its intent to provide a remedy independent of those available in an NLRB proceeding clear, and where the preemption doctrine consequently has no application. *See Teamster's, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964); *Smith v. Evening News Assoc.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Thus, section 8(a)(1) of the NLRA is still the exclusive remedy for claims, such as the ones made in the instant case, which hinge on an unfair labor practice having

occurred. To permit appellant to use the general civil rights statutes to protest alleged unfair labor practices, would essentially render the NLRA nugatory, a result we are unwilling to countenance. *See Motor Coach Employees v. Lockridge*, 403 U.S. at 286, 91 S.Ct. at 1917. Therefore, we hold that the NLRA provides an adequate remedy without creating another one under the Civil Rights Act. On this ground, then, the district court acted correctly in granting summary judgment.

■ We come to a similar conclusion about appellant's second basis for alleging retaliatory discharge—he was terminated because he complained about sexual harassment, that that harassment was condoned by the employer, and that he opposed what he contends was discriminatory treatment of minorities at the Hospital.[5] Clearly, if an employee has engaged in expression against employer policies, even within the context of union activities, which violate the Civil Rights Act, such as discriminatory treatment of minorities or sexual harassment, and the employee alleges discharge for that expression, section 704(a) would be implicated for the narrow expression-related claims. But section 704 provides a remedy only if the allegations made are substantiated. It is here that Morgan fails.

The district court ably describes how appellant's claim fails to hold up under scrutiny: he failed to specify any particular prohibited practices that he opposed and/or sought to change; he offered no evidence suggesting that those responsible for his discharge were aware of his alleged prohibited activities; and the lapse in time between the alleged prohibited activities and the discharge was too long to support an inference of retaliation. Finally, we note that even if Morgan could have established a *prima facie* case for retaliatory termination, he presented no evidence that the Hospital's stated reason for discharging him—the assault on the co-worker—was

---

5. This issue can also be decided on alternative grounds. Upon review, we agree with the district court that the record is devoid of any evidence of promotions which he applied for but was refused. Consequently, we find that summary judgment was appropriately granted on the issue whether he was wrongfully denied promotions.

mere pretext. *See Johnson v. Allyn & Bacon, Inc.,* 731 F.2d at 70.

## III. PROPRIETY OF GRANTING MOTION TO DISMISS

■ Although the district court's discretion to dismiss a complaint is circumscribed by the Due Process Clause, we cannot find that the district court abused its discretion where, as here, the appellant willfully violated procedural rules and orders of the district court. He was not, therefore, entitled to have his case heard on the merits. *Wyle v. R.J. Reynolds Ind., Inc.,* 709 F.2d 585 (9th Cir.1983). We agree with the district court that this "case reflects a persistent pattern of disregarding or disobeying the requirements of the Federal Rules of Civil Procedure, the Local Rules of the ... District Court and explicit court orders." [6]

The fact that sanctions less drastic than dismissal existed is immaterial. As this court has previously stated, "there is nothing in [Rule 37(b)(2)] that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried." *Damiani v. Rhode Island Hospital Corp.,* 704 F.2d 12, 15 (1st Cir.1983). After careful review, we are satisfied that the district court thoughtfully considered all relevant factors, and that it did not abuse its discretion in dismissing the action.

## IV. DENIAL OF ATTORNEY'S FEES

■ From the record before us, we are unable to determine the basis of the district court's denial of the Hospital's motion for reasonable attorneys' fees. Although it is clear that a district court has considerable discretion in imposing sanctions, including the award of attorney's fees, *see Carlucci v. Piper Aircraft Corp., Inc.,* 775 F.2d 1440, 1446–47 (11th Cir.1985); *United States v. National Medical Enterprises, Inc.,* 792 F.2d 906 (9th Cir.1986); Fed.R. Civ.P. 37(b)(2) and advisory committee's note, it is equally well settled that the decision to do so must both be explained and be supported by the record. *Carlucci,* 775 F.2d at 1453 (district court must state its reasons so that meaningful review for abuse of discretion may be had). If this is the district court's burden when sanctions are imposed, it follows naturally that a similar obligation exists where, as here, sanctions are requested by one party, but denied by the court. It can as easily be an abuse of discretion to deny an award of fees as it can be to award them. Either way, appellate review of such a decision necessitates a statement of reasons. We therefore vacate the district court's decision on this single issue, and remand to the district court for reconsideration of the Hospital's motion for attorney's fees.

## V. CONCLUSION

For the reasons stated above, we affirm the judgment below in all respects, except as to the denial of the motion for attorney's fees. We vacate that portion of the decision and remand for further proceedings consistent with this opinion.

*Affirmed* in part, *vacated* in part and *remanded* in part. Costs to appellee.

---

**6.** While we decline to address each instance of objectionable conduct upon which the district court relied in granting the motion to dismiss, we will list some of appellant's failures, as illustrative of the rest. Appellant failed to timely and properly answer written interrogatories, failed to comply with a September 9, 1986 Court order, failed to appear at a deposition, failed to appear at a Magistrate's hearing, failed to comply with discovery, and failed to respond, as ordered, to the Hospital's summary judgment motion. Appellee is correct in noting that much less serious misconduct led to dismissal in *Ganapolsky v. Keltron Corp.,* 823 F.2d 700 (1st Cir.1987). The fact that appellant has explanations for some of the objectionable conduct does not excuse all of his actions.