UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1295

VINCENT R. TAMBURELLO,

Plaintiff - Appellant,

v.

COMM-TRACT CORPORATION, JOHN F. POLMONARI,
EDWARD MENARD, AND STEVEN DICKIE,

Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Lynch, Circuit Judge, 

and Casellas,* District Judge. 



Matthew Cobb, with whom Law Office of Matthew Cobb, was on 
brief for appellant.
Timothy P. Van Dyck, with whom Joshua L. Ditelberg and 
Edwards & Angell, were on brief for appellees. 



October 2, 1995


 

* Of the District of Puerto Rico, sitting by designation.

TORRUELLA, Chief Judge. Vincent Tamburello TORRUELLA, Chief Judge. 

(Tamburello) appeals the dismissal of his complaint against his

employer, Comm-Tract Corporation (Comm-Tract), and several

individuals who were his supervisors at Comm-Tract. Tamburello

alleges that his supervisors engaged in a course of harassment in

retaliation for his union activities as a union steward, and

seeks damages under, inter alia, the Racketeering Influenced and 

Corrupt Organizations Act (RICO), 18 U.S.C. 1962(c) (1988), and

the Massachusetts Civil Rights Act (MCRA), Mass. Gen. L. ch. 12,

11I (1988). The district court found that Tamburello's claims

are preempted by the National Labor Relations Act, as amended, 29

U.S.C. 151-161 (1988) (NLRA), and therefore dismissed his

complaint for failure to state a claim upon which relief may be

granted, Fed. R. Civ. P. 12(b)(6). We affirm.

BACKGROUND BACKGROUND

We review the dismissal de novo, considering only those 

facts alleged in the complaint, and drawing all reasonable

inferences therefrom. Lesser v. Little, 857 F.2d 866, 867 (1st 

Cir. 1988). We will affirm the dismissal "only if it appears

beyond doubt that [Tamburello] can prove no set of facts which

would entitle him to relief." Id. (citing Conley v. Gibson, 355 

U.S. 41, 45-46 (1957)).

In July 1991, Tamburello became a union steward at

Comm-Tract. He alleges that soon afterwards the individual

defendants -- the president, general manager, and manager of

Comm-Tract -- began harassing, threatening and intimidating him.

-2-

Specifically, Tamburello alleges that they pulled him off

favorable jobs, replacing him with less skilled workers; gave him

menial job assignments; withheld his personnel file from him;

took him off jobs to deny him overtime pay; made him take a

forced vacation or face termination; took away his company

vehicle; and made threatening anti-union statements. Tamburello

alleges that these actions "were solely to harass, embarrass,

coerce, and intimidate [him] into giving up his Steward position

with the Union." As a result of this intimidation, Tamburello

resigned his position with Comm-Tract in May 1993, and

subsequently instituted this action.

DISCUSSION DISCUSSION

Count I of Tamburello's complaint alleges that the

individual defendants conducted the affairs of an enterprise,

Comm-Tract, through a pattern of Hobbs Act extortion of

Tamburello's property rights, in violation of RICO, 18 U.S.C. 

1962(c). Count II alleges that the individual defendants

conspired to violate RICO by knowingly joining the enterprise and

by committing, or agreeing to commit at least two acts of

racketeering. Count IV alleges that all defendants violated

Tamburello's rights under the MCRA.1 We address the RICO claims

first.

I. The RICO Claims I. The RICO Claims 

 

1 Tamburello does not appeal the district court's dismissal of
Counts III and V.

-3-

Tamburello alleges that the actions of his supervisors

at Comm-Tract constituted a pattern of extortion to deprive him

of his rights to speak out on union matters, his rights under the

collective-bargaining agreement, and his right to his job. The

district court held that Tamburello's RICO claims are preempted

by the NLRA, which "pre-empts state and federal court

jurisdiction to remedy conduct that is arguably protected or

prohibited by the Act." Amalgamated Ass'n of Street, Elec. Ry. & 

Motor Coach Employees v. Lockridge, 403 U.S. 274, 276 (1971) 

(citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 

244 (1959)).

The NLRA "is a comprehensive code passed by Congress to

regulate labor relations in activities affecting interstate and

foreign commerce." Nash v. Florida Indus. Comm'n, 389 U.S. 235, 

238 (1967). The NLRA reflects congressional intent to create a

uniform, nationwide body of labor law interpreted by a

centralized expert agency -- the National Labor Relations Board

(NLRB). Accordingly, the NLRA vests the NLRB with primary

jurisdiction over unfair labor practices. See 29 U.S.C. 158. 

Applying these principles, the Garmon Court held that "[w]hen an 

activity is arguably subject to 7 or 8 of the [NLRA], the

States as well as the federal courts must defer to the exclusive

competence of the National Labor Relations Board if the danger of

state interference with national policy is to be averted."

Garmon, 359 U.S. at 245. The Court has interpreted this to mean 

that, "as a general rule, neither state nor federal courts have 

-4-

jurisdiction over suits directly involving 'activity [which] is 

arguably subject to 7 or 8 of the Act.'" Vaca v. Sipes, 386 

U.S. 171, (1967) (emphasis added; and quoting Garmon, 359 U.S. at 

245). See also Morgan v. Massachusetts General Hosp., 901 F.2d 

186, 194 (1st Cir. 1990) ("as a general rule, the [NLRB] has

'exclusive jurisdiction to find, prevent, and rectify unfair

labor practices'") (quoting New Mexico Dist. Council of 

Carpenters, AFL-CIO v. Mayhew Co., 664 F.2d 215 (10th Cir. 1981); 

and collecting cases)). A primary justification of the

preemption doctrine is "the need to avoid conflicting rules of

substantive law in the labor relations area and the desirability

of leaving the development of such rules to the administrative

agency created by Congress for that purpose . . . ." Vaca, 386 

U.S. at 180-81.2

The alleged wrongful conduct in this case is arguably

prohibited by the NLRA. Section 8(a)(3) of the NLRA makes it
 

2 Although the Garmon doctrine, which is rooted in the Supremacy 
Clause of the United States Constitution, U.S. Const. art. VI,
cl. 2, was originally concerned only with federal supremacy over
conflicting state laws, it has been extended to cover the 
relationship between the NLRA and other federal statutes. See 
Connell Co. v. Plumbers & Steamfitters, 421 U.S. 616, 626 (1974); 
Morgan, 901 F.2d at 194; New Bedford Fishermen's Welf. Fund v. 
Baltic Ent., 813 F.2d 503, 504-05 (1st Cir. 1987). But see 
United States v. Boffa, 688 F.2d 919, 931-33 (3d Cir. 1982) 
(concluding that Garmon does not apply to conflicts between the 
NLRA and federal statutes), cert. denied, 460 U.S. 1022 (1983). 
Because the NLRA's relationship with a state statute implicates
the Supremacy Clause, and its relationship with a federal statute
does not, some courts hold that the analysis in the former
situation should be stricter than in the latter. See Britt v. 
Grocers Supply Co., Inc., 978 F.2d 1441, 1446-47 (5th Cir. 1992); 
Boffa, 688 F.2d at 931-33. The facts of this case are such that 
we need not at this time decide whether, or to what extent, we
agree with this proposition.

-5-

unlawful for an employer "by discrimination in regard to hire or

tenure of employment to encourage or discourage membership in any

labor organization." 29 U.S.C. 158(a)(3). The ultimate

question presented by Tamburello's claims is whether his

supervisors at Comm-Tract intimidated, coerced, threatened, and

harassed him into quitting his job in retaliation for his union

activities as a union steward. It is beyond dispute that these

allegations, if found to be true, would constitute a violation of

the NLRA. See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 894 (1983) 

(an employer violates 8(a) (3) "when, for the purposes of

discouraging union activity, . . . it purposefully creates

working conditions so intolerable that the employee has no option

but to resign").3 Unless an exception applies, therefore,

Tamburello's RICO claims are subject to the NLRB's primary

jurisdiction.

There are three generally recognized exceptions to the

NLRB's primary jurisdiction. The first is where Congress has

expressly carved out an exception to the NLRB's primary

jurisdiction. Vaca, 386 U.S. at 179-80 (citing cases); Brennan 

v. Chestnut, 973 F.2d 644, 646 (8th Cir. 1992). Congress has not 

 

3 Tamburello's claims are also arguably subject to 8(a)(1) of
the NLRA, which makes it an unfair labor practice for an employer
to "interfere with, restrain, or coerce employees in the exercise
of the rights guaranteed in [ 7 of the NLRA]." 29 U.S.C. 158
(a)(1). Section 7 provides, in pertinent part, that employees
shall have the right to "self-organization, to form, to join, or
assist labor organizations, to bargain collectively through
representatives of their own choosing, and to engage in other
concerted activities for the purpose of collective bargaining or
other mutual aid or protection . . . ." 29 U.S.C. 157.

-6-

made an exception to the NLRB's primary jurisdiction for claims

alleging extortion. Indeed, the only labor-related

"racketeering" activity expressly listed as predicates to

liability under RICO are actions concerning restrictions of

payments and loans to labor organizations, or those relating to

embezzlement from labor funds. See 18 U.S.C. 1961(1)(C); 29 

U.S.C. 186, 501(c). The specific exceptions carved out in 

186 and 501(c) support the conclusion that Congress intended that

"violations of labor laws other than 186 [or 501(c)] alleged

as predicate acts are preempted." Brennan, 973 F.2d at 647 

(citing Butchers' Union, Local No. 498 v. SDC Inv., Inc., 631 F. 

Supp. 1001 (E.D.Cal. 1986)). This exception therefore does not

apply.

The second exception applies when the regulated

activity touches "interests so deeply rooted in local feeling and

responsibility that, in the absence of compelling congressional

direction," courts "could not infer that Congress had deprived

the States of the power to act." Sears, Roebuck & Co. v. 

Carpenters, 436 U.S. 180, 195 (1977) (quoting Garmon 359 U.S. at 

244). This exception is inapplicable to plaintiff's RICO claims

because they involve the relationship between two federal laws,

as opposed to a state and a federal law.

The third exception holds that the NLRB's exclusive

jurisdiction does not apply if the regulated activity is merely a

peripheral or collateral concern of the labor laws. Vaca, 386 

U.S. at 179-80; Brennan, 973 F.2d at 646. Under this exception, 

-7-

federal courts may decide labor questions that emerge as

collateral issues in suits brought under statutes providing for

independent federal remedies. Connell Construction, 421 U.S. at 

626; Britt v. Grocers Supply Co., Inc., 978 F.2d 1441, 1446 (5th 

Cir. 1992).

Plaintiff's allegations arguably establish violations

of both RICO and the NLRA -- extortion on the one hand, and

unfair labor practices on the other. We must determine whether

the issues raised by Tamburello's potential unfair labor practice

claims are merely collateral to the issues raised by his RICO

extortion claims. In making this determination, several federal

courts take the position that courts must defer to the primary

jurisdiction of the NLRB if the underlying conduct of the RICO

claim is wrongful only by virtue of, or reference to, the labor

laws. See Brennan, 973 F.2d at 646; Talbot, 961 F.2d at 662; 

Mann v. Air Line Pilots Assoc., 848 F. Supp. 990, 993 (S.D.Fla. 

1994); McDonough v. Gencorp, Inc., 750 F. Supp. 368, 370 

(S.D.Ill. 1990). One federal court has framed the issue as

follows:

RICO should be read as limited by the
exclusive jurisdiction of the NLRA only
when the Court would be forced to
determine whether some portion of the
defendant's conduct violated labor law
before a RICO predicate act would be
established. So long as the predicate
act exists independent of any unfair
labor practice resolutions, the NLRB's
exclusive jurisdiction is not violated
since the Court will not be forced to
interpret labor law except as a
collateral matter. However, if the
existence of the predicate acts depends

-8-

wholly upon a determination that a
violation of federal labor law occurred,
jurisdiction is preempted.

MHC v. Intern. Union, United Mine Wkrs. of Am., 685 F. Supp. 

1370, 1376-77 (E.D.Ky. 1988). Similarly, we have held, in the

context of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 

2000e et seq., that the NLRA is the exclusive remedy for claims

"which hinge on an unfair labor practice having occurred."

Morgan, 901 F.2d at 194. 

Like Tamburello, the plaintiff in Brennan alleged 

extortion as a predicate RICO act. In holding that the

plaintiff's RICO extortion claim was "preempted" (see supra n.2) 

by the NLRA, the Eighth Circuit court noted that 18 U.S.C. 1951

(1988) is a generic law prohibiting extortion,4 and reasoned

that the court was therefore forced to look to the labor laws to

define the alleged illegal conduct. Because the defendant's

conduct was illegal, if at all, only by virtue of the NLRA, the

 

4 18 U.S.C. 1951 provides:

(a) Whoever in any way or degree
obstructs, delays, or affects commerce or
the movement of any article or commodity
in commerce, by robbery or extortion or
attempts or conspires so to do, or
commits or threatens physical violence to
any person or property in furtherance of
a plan or purpose to do anything in
violation of this section shall be fined
not more than $10,000 or imprisoned not
more than twenty years, or both.

RICO defines "extortion" as "the obtaining of property from
another, with his consent, induced by wrongful use of actual or
threatened force, violence, or fear, or under color of official
right." 18 U.S.C. 1951(b)(2).

-9-

court concluded that the NLRB had exclusive jurisdiction to

resolve what was, at its essence, an unfair labor practice claim.

See Brennan, 973 F.2d at 647. 

For reasons similar to those expressed in Brennan, we 

conclude that the unfair labor practice issues implicated by

Tamburello's complaint are not merely collateral to his RICO

claims.5 Tamburello alleges that his supervisors placed him on

the less desirable work assignments, reduced his chances for

overtime pay, made him take a forced vacation or face

termination, took away his company vehicle, and made threatening

anti-union activities, all to coerce him into giving up his union

steward position, and, eventually, to resign his position with

Comm-Tract. The problem is that none of this alleged conduct is

illegal without reference to the NLRA. It is the NLRA that

prohibits employers from creating intolerable working conditions

to discourage union activities, see 29 U.S.C. 158(a)(3); Sure- 

Tan, 467 U.S. 894, and it is the NLRA that prohibits an employer 

from interfering with an employee's right to join a union and

engage in concerted activities for mutual aid and protection.

See 29 U.S.C. 158(a)(1), 157. Indeed, one would presume that 

Congress passed the NLRA, at least in part, precisely because

 

5 We note also that, in a general sense, claims alleging
employer retaliation for protected union activities are not
merely a peripheral concern of the NLRA. As indicated above, the
conduct alleged in this case would, if true, constitute an unfair
labor practice under the NLRA. The authority of the NLRB to
remedy unfair labor practices is central to its purpose. NLRB v. 
State of Illinois Dept. of Employment Security, 988 F.2d 735, 739 
(7th Cir. 1993).

-10-

conduct such as that complained of by Tamburello was not

theretofore prohibited. We thus agree with the district court's

conclusion that "the alleged conduct that led to [Tamburello's]

termination of employment is illegal only by reference to union

activities."

In order to determine whether plaintiff has established

a RICO predicate act, a reviewing court would be forced to decide

whether some portion of the defendant's conduct violated the

federal labor laws. Because plaintiff's claim hinges upon a

determination of whether an unfair labor practice has occurred,

we conclude that his RICO claims are subject to the primary

jurisdiction of the NLRB.6

As a final matter, we will briefly address two

additional arguments proffered by the plaintiff. First,

Tamburello contends that the NLRA does not apply to his

allegations at all because his RICO claims are asserted against

the individual defendants, and not the "employer" within the

meaning of the NLRA. The NLRA expressly provides, however, that

"[t]he term 'employer' includes any person acting as an agent of

an employer, directly or indirectly." 29 U.S.C. 152(2). The

 

6 We note that the question of whether a labor law issue is
collateral to issues raised by a claim under another statute is
an intensely fact driven inquiry. The focus must be on the
particular allegations of the plaintiff's complaint to determine
whether any or all of the claims may be resolved without
determination of questions of federal labor law. In addition,
"[i]t is the conduct being regulated, not the formal description
of governing legal standards, that is the proper focus of
concern." Motor Coach Employees v. Lockridge, 403 U.S. 274, 292 
(1971).

-11-

district court's finding that the individual defendants -- the

president, general manager, and manager of Comm-Tract -- acted as

the agents of the company is supported by the record,

particularly since Tamburello's complaint alleged that the

individual defendants controlled Comm-Tract. See American Press, 

Inc. v. NLRB, 833 F.3d 621, 625 (6th Cir. 1987) (the test to be 

applied is "whether, under all the circumstances, the employees

could reasonably believe that an employee was reflecting company

policy, and speaking and acting for management") (quoting

Aircraft Plating Co., 213 N.L.R.B. 664 (1974)). We therefore 

reject Tamburello's argument that the NLRA does not apply to his

RICO claims.

Second, Tamburello strains to fit his case within the

exception to Garmon granted suits alleging a breach of the duty 

of fair representation under 9(a) of the NLRA. See Breininger 

v. Sheet Metal Workers Int'l Assoc. Local Union No. 6, 493 U.S. 

67, 74 (1989) (reiterating rule that Garmon preemption does not 

apply to suits alleging a breach of the duty of fair

representation) (citing Vaca, 386 U.S. at 181). Tamburello did 

not sue his union directly, but rather brought his fair

representation allegations as part of a "hybrid" action under 

301, which provides federal jurisdiction for employees to sue

their employer for breach of a collective bargaining agreement,

and their union for breach of its duty of fair representation.

See 29 U.S.C. 185(a); Vaca, 386 U.S. at 186. The Breininger 

Court implied that Garmon would not apply to hybrid 301/fair 

-12-

representation claims because of the important interest of having

the same entity adjudicate a joint claim against both the

employer and the union. See Breininger, 493 U.S. at 80-84. 

Tamburello argues that the reasoning of Breininger applies to him 

because he brought both a RICO claim and a fair representation

claim.

Breininger concerned hybrid actions against the 

employer for breach of a collective bargaining agreement, and

against the union for breach of the duty of fair representation.

Tamburello's argument fails because his duty of fair

representation claim (Count III) was dismissed by the district

court, and is not prosecuted on appeal, and his RICO claims

implicate none of the concerns underlying Breininger and Vaca for 

exempting fair representation claims from the Garmon doctrine. 

Vaca and Breininger exempted fair representation claims from the 

reach of Garmon for two related reasons. First, the Court noted 

that the duty of fair representation has judicially evolved, and

that it predated the prohibitions against unfair labor practices.

Breininger, 493 U.S. at 74-79 (citing Vaca, 386 U.S. at 181). 

Second, noting that fair representation claims often involve

matters outside the NLRB's unfair labor practice jurisdiction,

the Court expressed its doubt that the NLRB brought any greater

degree of expertise to such claims than courts. Id. Because 

Tamburello has no viable duty of fair representation claim before

the court, and his RICO claims do not implicate the concerns

-13-

underlying Breininger, his claims remain subject to the primary 

jurisdiction of the NLRB.

II. The State Law Claims II. The State Law Claims 

In Count IV, Tamburello alleges that the conduct of his

supervisors violated his rights under the MCRA, Mass. Gen. L. ch.

12 11, which provides a remedy for the interference "by threat,

intimidation, or coercion" with an individual's "exercise or

enjoyment of rights secured by the constitution or laws of the

United States, or of rights secured by the constitution or laws

of the commonwealth." Mass. Gen. L. ch. 12, 11I; Bally v. 

Northeastern University, 403 Mass. 713, 717 (1989). As explained 

above, the alleged conduct of Tamburello's supervisors is

arguably subject to 8(a)(3) of the NLRA, which prohibits an

employer from discriminating against an employee on the basis of

union status, and also to 8(a)(1). As with the RICO claim,

therefore, the question is whether any of the three exceptions to

Garmon preemption apply. The first and third exceptions do 

not;7 we address the second exception below.

Garmon preemption does not apply when the underlying 

regulated activity touches "interests so deeply rooted in local

feeling and responsibility that, in the absence of compelling

 

7 The first exception -- whether Congress has explicitly carved
out an exception to the NLRB's exclusive jurisdiction -- is
inapplicable to Tamburello's state law claims. With respect to
the third exception, we concluded above that the unfair labor
practice issues implicated by Tamburello's complaint are not
merely collateral to his RICO claims. For the same reasons, they
are not merely collateral to his MCRA claims. The third
exception therefore does not apply.

-14-

congressional direction," courts "could not infer that Congress

had deprived the States of the power to act." Sears, Roebuck, 

436 U.S. at 195 (quoting Garmon 359 U.S. at 244). In cases 

where, as here, the underlying conduct is arguably prohibited by 

the NLRA, the Court has identified two prerequisites to

application of the "local interests" exception. First, the state

must have a significant interest in protecting the citizen from

the challenged conduct. Second, the controversy which could be

presented to the state court must be different from that which

could have been presented to the NLRB. Sears, Roebuck, 436 U.S. 

at 196-97. As the Court explained:

The critical inquiry, therefore, is
not whether the State is enforcing a law
relating specifically to labor relations
or one of general application but whether
the controversy presented to the state
court is identical to . . . or different
from . . . that which could have been,
but was not, presented to the Labor
Board. For it is only in the former
situation that a state court's exercise
of jurisdiction necessarily involves a
risk of interference with the unfair
labor practice jurisdiction of the Board
which the arguably prohibited branch of
the Garmon doctrine was designed to 
avoid.

Id. at 197. 

We assume, arguendo, that the state has a significant 

interest in protecting an employee from the harassment of his

supervisors in retaliation for his union activities. We agree

with the district court, however, that "Plaintiff's [MCRA] claims

raise the same question as would be asked in an unfair labor

practice proceeding, namely, whether [his supervisors] placed

-15-

plaintiff on less desirable work assignments, reduced his chances

for overtime pay, and harassed him in retaliation for his union

activities." 

Because the controversy which would be presented to a state court

is identical to that which would be presented to the NLRB, there

is a significant risk of state interference with the unfair labor

practice of the NLRB. Under Garmon and Sears, Roebuck, 

Tamburello's MCRA claims are therefore preempted by the NLRA.

CONCLUSION CONCLUSION

For the foregoing reasons, the judgment of the district

court is affirmed. affirmed 

-16-