**Debbie Elaine DOOLEY, Plaintiff,**

v.

**HENRY FORD HOSPITAL, Defendant.**

**Civil Action No. 94–40515.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 28, 1996.

Patrice L. Baker, Keller, Thoma, Schwarze, Schwarze, Dubay & Katz, P.C., Detroit, MI, Linda M. Foster, Detroit, MI, for defendant.

Debbie Elaine Dooley, Detroit, MI, pro se.

### *MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Plaintiff brings suit alleging that she was fired because of her race, in violation of Title VII. Defendant now moves for summary judgment, arguing that plaintiff has failed to make a prima facie showing of discrimination and has failed to rebut defendant's evidence that plaintiff was legitimately fired for threatening other employees. Pursuant to Local Rule 7.1(e)(2), this court will dispense with oral argument and decide this motion on the papers submitted. For the following reasons, this court will grant defendant's motion.

### I. Factual Background

In 1992, plaintiff was employed as a nurse's assistant at defendant hospital. In June 1992 plaintiff began having difficulties with co-workers. A series of disputes between plaintiff and defendant resulted from these difficulties, culminating in plaintiff's termination by defendant on September 30, 1992.

On June 20, 1992, plaintiff was unexpectedly reassigned by Michelle Grijalva, a floor nurse, due to a shortage of nursing staff. Plaintiff, admittedly angry at not being consulted prior to the reassignment, questioned Ms. Grijalva about the reassignment. Ms. Grijalva allegedly waved her finger at plaintiff and asked, facetiously, if plaintiff would like to be in charge. Plaintiff responded that if Ms. Grijalva "disrespected" her again, she would take care of Ms. Grijalva the way she took care of people on the street. In deposition testimony, plaintiff admitted that this meant that plaintiff would "knock the hell out of" Ms. Grijalva.

On June 23, 1992, plaintiff, having also been reassigned on June 21, 1992, sent a letter to Rebecca Rokicki, the Unit Nurse Administrative Manager, complaining of the reassignments, the lack of camaraderie on plaintiff's floor of the hospital, and Ms. Grijalva's patient care. The letter hints that Ms. Grijalva may treat African–American patients worse than Caucasian patients. In response to this letter, Ms. Rokicki met with plaintiff and said that she would schedule a staff meeting at which these issues could be addressed. The meeting was never scheduled. Plaintiff does not allege that Ms. Rokicki treated African–Americans differently than Caucasians.

The next troublesome incident for plaintiff occurred on June 26, 1992. Plaintiff was not scheduled to work that day, but had spoken with another nurse's assistant, Kecia Henderson, while Ms. Henderson was at work. Ms. Henderson told plaintiff that a nurse, Rena Sheehan, had incorrectly accused Ms. Henderson of substandard performance. It was plaintiff, not Ms. Henderson, who had worked with Ms. Sheehan on the date in question. In order to straighten out this confusion, against Ms. Henderson's wishes, plaintiff went to the hospital. Plaintiff admits to having had two cups of beer before arriving at the hospital and feeling slightly paranoid because of the criticism of her work. Plaintiff denies being loud, threatening, or acting unprofessionally while at the hospital. Several other nurses, however, reported to Rachel Hoffman, the Associate Administrator of Medical/Medical Specialty Units, that plaintiff was inappropriately loud and threatening in a patient care area when she arrived at the hospital on June 26.

Ms. Hoffman's first contact with plaintiff occurred on June 29, 1992, at a disciplinary meeting stemming from the incident on June 26. Ms. Hoffman, having completed her investigation of the incident, determined that plaintiff had acted inappropriately and suspended her for two days. Further, Ms. Hoffman referred plaintiff to the Employee Assistance Program for counseling. Plaintiff asserts that she felt that she was being discriminated against at this meeting, but cannot articulate any particular reason for these feelings. Plaintiff filed a grievance with respect to the suspension, arguing that she had not acted unprofessionally.

On August 1, 1992, plaintiff took a medical leave of absence from defendant hospital.[1] On that date, plaintiff spoke with a psychiatrist at defendant hospital. According to the psychiatrist's records, plaintiff had threatened to kill Ms. Hoffman during this conversation. In deposition testimony, plaintiff states that she doesn't remember making that comment, but that, in anger, she might have. On August 5, 1992, plaintiff checked herself into a psychiatric hospital. Shortly thereafter, against medical advice, plaintiff left the hospital.

On September 11, 1992, Sandra Nagy, a nurse, reported that plaintiff had called the hospital unit at which plaintiff worked and threatened to kill Ms. Grijalva and another nurse, Ms. Fox, who was one of the nurses who reported the incident on June 26, 1992 to Ms. Hoffman.[2] Plaintiff denies ever making this phone call.

As a result of this, and the other alleged incidents, plaintiff was terminated on September 30, 1992. Plaintiff filed a grievance concerning her termination. This grievance

---

1. The grievance procedure regarding plaintiff's two-day suspension was stayed pending her return to work.

2. Ms. Nagy reported that plaintiff, referring to Ms. Grijalva and Ms. Fox, repeatedly stated that she would "clock them out."

wound its way through the entire procedure created by the hospital to handle such grievances. This procedure ended when the grievance council, a body comprised of non-supervisory hospital employees, voted 8–3 to uphold the termination. Subsequently, plaintiff filed a charge with the EEOC, and eventually, this suit.

## II. Standard of Review

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993–94, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

■ 42 U.S.C. § 2000e–2(a) provides, in pertinent part:

> It shall be an unlawful employment practice for an employer—
>
> (1) ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race....

In order to survive summary judgment, plaintiff must present a prima facie case that she was fired because of her race. If such a case is presented, then the burden shifts to defendant to articulate a permissible justification for its actions. If that is done, then the burden shifts back to plaintiff to demonstrate that the defendant's justification is mere a pretext for race discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 503–06, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407, 415–16 (1993); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

■ A prima facie case that plaintiff was fired because of her race requires that (1) plaintiff is a member of a racial minority,

(2) plaintiff was qualified to continue her employment, (3) plaintiff was fired, and (4) plaintiff's position remained open and was eventually filled by a white person. *Hicks,* 509 U.S. at 503–06, 113 S.Ct. at 2746–47, 125 L.Ed.2d at 415–16. There is no evidence before the court concerning whether plaintiff's position remained open and whether she was replaced with a white person. Thus, plaintiff has failed to demonstrate a prima facie case of discrimination.

■ Assuming that plaintiff was able to demonstrate a prima facie case of discrimination, she still could not avoid summary judgment because defendant has articulated a nondiscriminatory justification for its actions, i.e., that plaintiff was improperly threatening other employees. Plaintiff has failed to demonstrate that "the proffered reason was not the true reason for the employment decision and that race was." *Id.* at 508, 113 S.Ct. at 2747, 125 L.Ed.2d at 416 (citations omitted).

Other than asserting her innocence, plaintiff presents no evidence that she was not terminated because of the reports of her threatening behavior. There is no evidence that plaintiff's race was even considered during defendant's investigation of plaintiff. It is clear that defendant fully investigated the various reports of plaintiff's inappropriate behavior and gave plaintiff an opportunity to present her side of the story. Taking the evidence in the light most favorable to plaintiff, defendant was justified in firing plaintiff on the basis of its investigation. Even if the hospital's investigation arrived at the wrong conclusion, there is no evidence that racial animus was the reason for that conclusion. *See Lenoir v. Roll Coater, Inc.,* 841 F.Supp. 1457, 1467 (N.D.Ind.1992) ("Viewing the record most favorably to [plaintiff], she has established that [defendant's] investigation may have led it to an incorrect factual determination, but she has not presented anything from which a trier of fact could find that race played a part in the decision."); *Morgan v. Massachusetts Gen. Hosp.,* 901 F.2d 186, 191 (1st Cir.1990) ("[E]vidence contesting the factual underpinnings of the reasons for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question.").

Further, plaintiff has presented no evidence that defendant has applied its otherwise neutral rules in a discriminatory manner. Plaintiff can point to no instances in which defendant determined that a white employee had repeatedly threatened other employees, yet did not fire that employee. In short, plaintiff has produced no evidence to suggest that plaintiff's race had any effect on either defendant's investigation of the reports of plaintiff's threatening behavior or defendant's decision, based on that investigation, to terminate plaintiff.

Accordingly, defendant's motion for summary judgment will be granted.

### ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment be **GRANTED.** It is hereby further ordered that plaintiff's claims be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

